Russell Tinsley #563
Special Treatment Unit
8 Production Way
Avenel, NJ 07001

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2025 JUL 28 A 11: 51

July 18, 2025

**EXPARTE REQUEST**

Judge Madeline Cox Arleo
United States District Court
M.L. King Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street.
Newark, New Jersey 07101

Re: **Russell Tinsley v. State of New Jersey Department of Human Services, et al 2:23-cv-00734-MCA-JBC Special Treatment Unit "SHADOW PRISON"**

Dear Honorable Judge Madeline Cox Arleo

Please accept this exparte communication as Plaintiff's Russell Tinsley's Request to Supplement his Complaint/Amended Complaint and his recent filed Certification of Russell Tinsley, In Support of his filed motions, and with leave to submit an amended complaint to be filed and docket with copies of multiple documents that are Attachment's Exhibits by a person in state custody, and pursuant to your Memorandum Opinion, and Order signed by Your Honor on 2/25/2025, dismissed the federal claims brought pursuant to 42 U.S.C. 1983.

First of all, as the Court is aware that, **MR. TINSLEY WAS DENIED HIS RIGHT TO AN ANNUAL REVIEW HEARING WITHIN HIS FIRST 1st YEAR OF THE CIVIL COMMITMENT ORDER., AND IT TOOK HIM 15 YEARS TO GET HIS FIRST ANNUAL REVIEW HEARING IN VIOLATION OF N.J.S.A. 30: 4-27.29 (A) AND MR. TINSLEY RIGHT TO DUE PROCESS.**

In the fifteen (15) years, since Mr. Russell Tinsley was civilly committed to the Special Treatment Unit ("STU") in May 2010. It took fifteen years later, before this case was tried over seven days, or portions thereof, on the following dates. September 15, 2021; September 28, 2021; October 13, 2021; October 20, 2021; October 28, 2021; January 19, 2022; and summations on January 25, 2022. All in violation of the **NJSVP-ACT STATUE** (N.J.S.A. 30:4-27.29).

All during the fifteen years of Mr. Tinsley, being civilly detained at the ("STU"), he refused to waive his right to an annual review hearing within statutorily required time period. (N.J.S.A. 30: 4-27.29.), **In the matter of The Civil Commitment of Russell Tinsley. The Docket Number is SVP-573-10.**

After the fifteen years of Mr. Tinsley was being denied his right to a once a year annual review commitment hearing, the annual review commitment hearing ultimately was held on the dates above, before the Honorable Judge Bradford M. Bury, J.S.C., and the court read its decision on the record (See 1T, refer to the Transcript of decision dated February 8, 2022), and a judgment

continuing to commit Mr. Tinsley to a New Jersey secure facility for further treatment, even though Mr. Tinsley was never charged, convicted and/or sentenced of a sex offense in the state of New Jersey.

While at the same time, Mr. Tinsley had only served a sentence in New Jersey for a 1997 charge for third degree theft, in violation of **N.J.S.A.** 2C:20-2b. Because the theft conviction is not an enumerated offense under **N.J.S.A** 30:4-27.26(a), and the fact that the New Jersey SVP-Act civil commitment laws, was not passed into law, until 1998, one year after Tinsley's 1997 Auto thief charge, it should had been taken into consideration, for the State to return Mr. Tinsley back to Pennsylvania, where the State relied upon a 2008 Pennsylvania conviction, in Philadelphia.

**"[T]he defendants has yet, directly addressed Mr. Tinsley's Grounds raised, or his Points in the lower courts and where in the trial Judge Court's ruling, was not in favor of R.T.'s. expert witness's testimony, reports and recommendation to discharge Mr. Tinsley from the STU, to return him back to Philadelphia, Pennsylvania was in violation of N.J.S.A.30:4-27.32(b), with a discharge plan prepared pursuant to section 14 [C.30:4-27.37] of this act, and under the United States Supreme Court's ruling in Jones v. Cunningham, 371 U.S. 236, 238, 83 S. Ct. 373, 9 L. Ed. 2d 285 (holding that certain parole requirements were sufficiently restrictive to render the convicted sex offender ("in custody"); see also Piasecki, 917 F.3d at 173 (concluding that the sufficiently onerous nature of a sex registration scheme constituted custody for the purposes of federal jurisdiction)".** See Mr. Tinsley's 3rd Circuit Court Order in Tinsley v. Court of Common Pleas No. 23-1174.

**"[T]he Third Circuit has set forth a three-part test to determine whether a restriction is custodial. U.S. v. Ross, 801 F.3d 374, 379 (3rd Cir. 2015). A restriction is custodial if it provides for restraints that are (1) severe; (2) immediate (not speculative); and (3) not shared by the public generally".** Id

In this case, the defendants failed to address, in their brief in opposition to plaintiff's claims, whether Mr. Tinsley's civil commitment was illegal based upon this **Federal Court's Standards "in custody", pursuant Russell Tinsley v. Court of Common Pleas,** et al., No.: 23-1174 (3rd Cir.),Court Order holding pending litigation on his Petition of Writ of Habeas Corpus that ("Mr. Tinsley") counsel provided ineffective assistance in advising him to plead nolo contendere without also advising him that: b.) The victim recanted in 2005, and refused to appear for trial, See, e.g., **Hill v. Lockhart**, 475 U.S. 52, 58 (1985; to the judgment in the state of Pennsylvania Court of Common Pleas, when he filed a pro se petition for writ of habeas corpus in March 2019. See **Russell Tinsley v. Court of Common Pleas**, No. 23-1174.

Also his plea would subject him to the Pennsylvania Megan's Law requirements, See **United States v. Bui,** 795 F.3d 363 (3d Cir. 2015; cf. **Piasecki v. Court of Common Pleas**, 917 F.3d 161, 173-75 (3d Cir. 2019) (holding that in Pennsylvania, SORNA requirements are part of a sentence rather than a Collateral Consequence of Conviction;) and his plea might subject him to civil commitment in New Jersey, **C.F. Bauder v. Dept. of Corr.** 619 F.3d 1972, 1274-75 (3d Cir. 2010)(Per curian)(**applying Padilla v. Kentucky** 559 U.S. 356 (2010); **State v. Bellamy** 835 A.2d 1231, 1238-39 (N.J. 2003).

The State of New Jersey, defendants in this matter, was represented by Deputy Attorney General Lauren Kirk, and who Judge Bury recommended firing two deputy and corrective actions for a third office member. "**Ms. Lauren Kirk and Stephen Slocum**;" and /or others who was assigned to Mr. Tinsley's case, and from the office of the New Jersey Attorney General, in his report to the AG's office, Matthew J. Platkin and Michael Long.

At Mr. Russell Tinsley's trial he was self-represented, but under the dictates of the **D.Y. case**, he was assigned standby counsel as to whom he consented, Mr. John McMahon.

On or about November 10, 2020; Mr. Tinsley filed his pretrial Statement and for Trial Preparation, as well as with a Notice of Motion to Submit Completion of Progress in Mr. Tinsley's Treatment Records for Discharge. (**Appendix Aa1 to Mr. Tinsley's appellant brief**) On the 9th day of February, 2022, a decision was filed by the Honorable Bradford M. Bury, J.S.C., denying Mr. Tinsley's motion, and his annual review hearing for a discharge from the Special Treatment Unit.

On April 6, 2022, Mr. Tinsley, filed in pro se, in the Appellate Division, his notice of appeal, and motion to proceed as an indigent. See **In the matter of Commitment of R.T.**, No. A-1887-21, 2023 WL 8016717 (N.J. Super.App.Div. Nov. 20, 2023) **Also see Mr. Tinsley's appellate Brief.**

## STATEMENT OF FACTS

On February 8, 2022, the court finds and ordered the continuing civil commitment of R.T., to the Special Treatment Unit ("STU") as a sexually violent predator ("SVP") under New Jersey's Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30: 4-27.24 et seq. Mr. Tinsley appeals his continued commitment to the Superior Court of New Jersey, Appellate Division, and the State of New Jersey Supreme Court, in which he disputes the court's decision.

In this case, the trial court judge abused its discretion and relied upon the state's witnesses to fabricate in their reports and testimony to commit perjury, based on amount of heaping prejudice in a biased, and social racial injustice manner that had violated Mr. Tinsley's Constitutional and Civil Rights as well as to violate his civil liberties.

Especially, where Mr. Tinsley had filed a Tort Claim, and his 42 1983 USC Civil Lawsuit against a psychologist Paul Dudek, who also was not a board certified member with the New Jersey Psychologist Examiners and with American Psychology Association ("**APA**"), a witness in this case, for the State, who testified and therefore there was a Conflict of Interest at the Annual Review Commitment Hearing. **See Mr. Tinsley's complaints against Dr. Paul Dudex (Appendix Aa23 and his additional complaint re Dr. Dudex Aa36 to Mr. Tinsley's appellant brief, See pages 29 – 46). And in addition his lawsuit filed against Dudex, in this Court.**

When in fact, the state failed to prove by clear and convincing evidence that Mr. Tinsley was subject to continued commitment as a sexually violent predator. And that the court improperly relied upon the state's witnesses that Mr. Tinsley, refused treatment; or didn't participated in treatment; or did not demonstrated behavioral stability appropriately in the STU treatment that was

offered, to find that Mr. Tinsley, is a current risk to re-offend; and upon completion in New Jersey, and for Mr. Tinsley, shall be free to return to Philadelphia, Pennsylvania to fulfill its Pennsylvania's sex registration requirements and out-patient treatment there, to be recognized and enforced valid judgment rendered by the Pennsylvania's court of common pleas.

At the time, the annual review hearing was held, with witnesses' testimony, and on behalf of Mr. Tinsley, his expert psychologist Dr. Ronald Silikovitz, with plenty of documents admitted into evidence on both the Appellate and Respondent's side of the case, which are reflected within the trial record. **(See expert psychologist Dr. Ronald Silikovitz, Ph.D's reports and testimony) made part of Mr. Tinsley's appellate Brief.**

The court has erroneously, continue to civilly detained Mr. Tinsley, at the ("STU") Special Treatment Unit, for the custody, care and treatment of sexually violent predators, on the 9th day of February, 2022.

Although, the court indicated to the attorneys and to Mr. Tinsley ("R.T.") **"that I believe he was not receiving adequate credit for his more recent active and meaningful participation in treatment since he has come off of treatment refusal status and has been promoted to Phase 2,"**.

And when the Hon. Bradford Bury, indicated that **"Russell Tinsley shall be promoted from his current Phase 2 to Phase 3A; or 4, &5 to work toward his discharge from the STU, at his next review hearing on September 7, 2022, so long as Mr. Tinsley continues to exercise good faith and due diligence in his treatment, as evidence by his recent advancement into Phase 2"**. Judge Bury, now retired, also noted that if **"he continues on his positive upward trajectory with regard to his treatment, he will be able to succeed one day and to be discharged safely into the community where he will not be at risk"**. See court order.

In addition, **"If Mr. Tinsley's condition so changes that there is no longer clear and convincing evidence he is likely to engage in acts of sexual violence if released, he may be discharge"**. Id. 30:4-27.36(a).

Thus far, despite Judge Bury's Findings, the trial judge erred and abused its discretion for not ordering Mr. Tinsley ("R.T.") discharge from the ("STU"), and where he did challenged his continued commitment and when his expert witness testified that Mr. Tinsley is no longer a sexually violent predator under the SVP Act.

Beside, prior to the treatment refusal status, and even though, Mr. Tinsley, never refusal treatment, he continue to be very active and meaningful participant in treatment during all the many years, (15 years to be exact). He has participated in treatment, and demonstrated behavioral stability appropriately in the ("STU") that was offered, upon competition in New Jersey, and for Mr. Tinsley ("R.T.") shall be free to return to Pennsylvania to fulfill its registered supervision and out-patient treatment there.

Prior to the treatment refusal status, the court has failed to also consider Mr. Tinsley's completion in process group 12, 14, and that since his civil commitment in 2021. He have

4

participated in all of his assigned process groups, in the ("STU") facility offered to him. As demonstrated by his appellant's discovery documents admitted into evidence, which was submitted in accordance with the admissibility rule in discovery in the course of a hearing proceeding within the trial records as requested by his ("STU") Treatment Team, he have been completing his modules, with his progress in treatment work. **Please see Certification of Russell Tinsley in Support of his Amended Complaint and Exhibits.**

## LEGAL ARGUMENT

Although, Mr. Tinsley case is unusual in that the state of New Jersey sought his commitment under the NJ-SVPA he was not supposed to be here in the first place, and when the only time he served in New Jersey was for an auto theft offense in 1997.

At present, his concerns regarding his Amended Complaint, is that although Judge Bury credited some of Dudex and Dorio's testimony and their unreliable conclusions that Mr. Tinsley should remain civilly committed, he noted that he "**did not find [Dorio] credible in certain areas with regards to giving [R.T.] his due, and his appropriate credit**". Id. At *2 **See Matter of Commitment of R.T.**, No. A-1887-21, 2023 WL 8016717 (N.J. Super. App. Div. Nov 20, 2023). **See Petitioner's appellate Brief.**

Judge Bradford Bury, had erred, and abused its discretion, for erroneously relied upon bias and prejudicial testimony of state witnesses. Dr. Nicole Dorio's who reports and testimony was based upon inaccurate information, it necessarily follows that the state witnesses reports and testimony is flawed and unreliable, as well as was a violation of Mr. Russell Tinsley's Civil and Constitutional rights.

Specifically, when the defendants has concedes the following: (1.) there are no details surrounding Mr. Tinsley 1971 juvenile offense; (2.) the 1983 California offense was dismissed; (3.) the disposition of the 1999 offense is unclear, but Mr. Tinsley presented evidence that this case was also dismissed; (4.) all of the disposition of the 2002 and 2004 failure to register offense are unknown to the defendants, but again Mr. Tinsley presented all these was dismissed; (5.) the details of the 2004 Pennsylvania sexual related charge are unknown to the defendants, but again Mr. Tinsley presented information that the charges were withdrawn and the failure to register offense was dismissed. Therefore the defendants' characterization of Mr. Tinsley as having more than two victims is grossly misleading and hyperbolic. The defendants stated in their brief and appendix on behalf of defendants' State of New Jersey: "**The underlying facts of these offenses are not available in the record, and it appears that these charges were dismissed.**" "Rb p.1" And they stated" "**No details of this offense are available**". Especially, in San Francisco, California, and in Philadelphia, PA.

Furthermore, the defendants' State experts Dudex and Dorio's offered explanations regarding the circumstances of the offenses for which they gave their diagnoses opinions . . . are incongruous and even absurd.

Mr. Tinsley's expert Dr. Ronald G. Silikovitz, Ph.D., on the other hand, in his diagnoses and assessment opinion of Mr. Tinsley: "**There is no evidence that Mr. Tinsley was motivated**

to portray himself in a more negative light than the clinical picture would warrant." Does address . . . the core requirement [] under the statute of whether Mr. Tinsley has mental abnormality or personality disorders. Id.

Here Mr. Tinsley disagreed with defendants' version that he did not raised these issues in the trial level before Judge Bury, and on his Appeal. **Please see Tinsley's appellate Brief and Tinsley's appellate appendix, volume 1.**

Judge Bury, now retired, is interviewed in one of the news articles submitted by Mr. Tinsley. See ECF No.1 and exhibits. Also **see nj.com "Shadow Prison".** Judge Bury discusses problems with the way New Jersey's civil commitment program is administered and expresses his view that up to 1/3 of detainees at the STU could be released safely. See id.

Mr. Tinsley notes, however, that Judge Bury erred in denying Mr. Tinsley his discharge from the Special Treatment Unit ("STU"), after its findings the state psychologists, failed to credit him adequately for the progress that he made in treatment to be discharged, and just determined in Mr. Tinsley's case that he should remain civilly committed with an expedited review period.

Judge Bury also erred, to determine that Mr. Tinsley's expert opinion from Dr. Silikovitz was not credited over the Dudex and Dorio, and here it was inappropriate, and a reversible error for the civil commitment courts to not discharged Mr. Tinsley, and also when in fact, Mr. Tinsley's expert Dr. Silikovitz's reports which was prepared in this case, and gave his testimony under oath, that "Mr. Tinsley did not meet the criteria for commitment, under the statute of whether the individual has a mental abnormality or personality disorders.

In Dr. Silikovitz's opinion he gave his testimony "**at that time Mr. Tinsley would be highly likely to comply with conditions of discharge, and he testified that Mr. Tinsley did not meet the three elements pointed out by the NJSVP-Act if the court were to release him**".

**Dr. Ronald Silkovitz Ph.D was qualified as Mr. Tinsley's expert witness in psychology, and psychiatry, specifically as to completing risk assessments for sexually violent predators under the SVPA, and who raised it before the trial court and where as such, Mr. Tinsley has raised it on his appeal, as he did addressed it at his annual review hearing, appeal, and now in the Federal Court Petition for Writ of Habeas Corpus, to challenge the respondents' brief in opposition to Petition for a writ of Habeas Corpus, against his continued commitment and when his expert testified that Mr. Russell Tinsley is no longer a sexually violent predator under the NJSVP-Act. See N.J.S.A. 30; 4-27.35.**

Dr. Silikovitz, Ph.D was accepted by the New Jersey Board of Psychological Examiners and a member of the American Psychological Association, when in fact Dr. Dorio and Dr. Dudex was not accepted nor a member.

Although, Dr. Silikovitz, was accepted as an expert in psychology without objection. See trial's transcript (3T66:20-25). He evaluated Mr. Tinsley twice, at lease for three (3) hours each in 2015 and in 2020, and prepared a report each time. **See Mr. Tinsley's Appellant Brief appendix (Aa53-61; Aa62-67).** In opining that Mr. Tinsley's age, (Who is now 70 seventy years old) is no

longer highly likely to offend, the doctor emphasized Mr. Tinsley's age – given the generality that sexual and antisocial drives decrease with age – and Mr. Tinsley's medical reported inability to achieve an erection and ejaculation. (3T73:13-74:7 (**"The likelihood of a sexual crime is obviously reduced."**)). The doctor also placed significant weight on Mr. Tinsley's (Now over 15 years being detained), not committed a sexual violent offense while committed to the Special Treatment Unit (STU). (3T75:11-22).

### WHETHER OR NOT MR. TINSLEY'S RELIGIOUS BELIEF AN PRACTICE IS A FACTOR OF Mr. Tinsley's relapse prevention plan, is less likely to offend any offenses, criminal – non-sexual or sexual offenses.

He further identified Mr. Tinsley's conversion to Islam as a factor mitigating risk: (As was argued by Mr. Tinsley in his Appellant Brief) **"And if someone is an Islam minister [] they're less likely to commit any kind of crime in the future, let alone sexual crimes."** (1T46-23-35), and (3T79:3-7).

The defendants however, completely disregards the First Amendment of the Constitution of the United States that protects everyone's right to freedom of religion. This right is violated if Mr. Tinsley is not allowed to believe in his religious' belief and practice, that is a factor of his Relapse Prevention Plan, is less likely to offend any offenses, criminal –non-sexual or sexual offenses, the defendants are not allowing Mr. Tinsley to practice his religion. The defendants is now being bias and prejudicial and discriminating against Mr. Tinsley, his religious belief and totally contradict and disregarded the psychological and social issues at the full most STU's Programs for relapse Prevention Module and Good Life Exploration Group Module that Mr. Tinsley's participated in, has completed and addresses this issue. See (Aa135 and Aa233) and **Petitioner's Brief Exhibit "B" pages 46-52.**

If the religion of Mr. Tinsley, is a factor of his Relapse Prevention Plan, and is restricted as an excuse to prevent, as a patient who is receiving treatment is less likely to offend. This clearly violates his right to practice his religion by not permitting him to using his faith as a factor of his relapse Prevention Plan. This clearly violates his right to practice his religion in the STU. This is a discriminatory conduct on the part of the people who manage the operation of the STU.

Judge Bury abused his discretion, again, because the court could have found that Mr. Tinsley did not meet the threshold for commitment, and based on Dr. Silikovitz's reports and testimony.

### a.) Petitioner Claims Related to the Failure to provide adequate Treatment and/or to Advance him in Treatment because of bias and prejudicial testimony of state witnesses. Dr. Dorio and Dudex

According to the court order, and how Judge Bury determined that in this case, Mr. Tinsley's Treatment Team, TPRC, Dr. Dorio and Dr. Dudex **"failed to credit him"** for his progress he made and completed in treatment, the Court ordered an **"accelerated review"** of Mr. Tinsley's progress. **See Certification of Russell Tinsley In Support of his Amended Complaint.**

And in addition, the gravamen of Plaintiff's Claims raised: "**That the trial court erred in denying R.T. his discharge from the Special Treatment Unit "STU"**, after its findings the state psychologists failed to credit R.T. adequately for the progress that he made in his treatment to be discharged. And whether R.T. shall be discharged to Philadelphia, PA., to fulfill its Pennsylvania's registration requirements, **pursuant to U.S. v. Ross**, 801 F.3d 374, 379 (3rd Cir. 2015) rendered by the PA's court of common pleas".

[T]he present situation, and even after Judge Bury Court ordered an "**accelerated review**" of Mr. Tinsley's progress. The defendants are still not adequately providing treating, but blocking it to not advancing him in treatment due to:
 1) His filing of complaints, in pro se self-representation, his habeas corpus petition and in his lawsuit,
 2) His self-representation in his civil commitment proceedings, and
 3) Racial and religious bias against him. See Petition at (EC 1) Petitioner raised that defendants have retaliated, "**racially and religiously targeted**," and "**discriminated against**" him by failing to even advance him to Phases 3, 4, and 5 and failing to discharge him from the STU, in spite of Judge Bury ordered an "**accelerated review**" of Mr. Tinsley's progress. Id.

To provide context for Mr. Tinsley's Grounds raised, the Court must summarize the available record from his filing Request/Grievances' evidence, which was submitted by him and the STU's staff. See **Certification of Russell Tinsley In Support of his Amended Complaint.**

Suffice to say, Judge Bury also "**recognized Mr. Tinsley was "promoted to Phase 2' after he was removed from treatment refusal status. In view of his progress, the judge "order[ed] that by the next expedited review hearing date, so long as he continues to. . .meaningfully engage in treatment, he shall move to Phase 3A**.'" But that did not happen in this case, because as soon as Mr. Tinsley began to challenge the STU's staff about Judge Bury order, that the STU are subject to dated February 9, 2022, which required Petitioner to be promoted from Phase 2 to Phase 3A at his next review hearing on September 7, 2022, as long as Petitioner continue to exercise good faith and due diligence in his treatment. See **Certification of Russell Tinsley In Support of his Amended Complaint.**

According to Plaintiff's STU's filed Request/Grievances' Exhibits, his "**treatment team, TPRC, and Dr. Dudex, began to block treatment advancement and to sabotage**" "**failed to credit**" Mr. Tinsley for his progress he made and completed in treatment and when, before and after the Court ordered an "**accelerated review**" of his progress, even further. Id.

This is in further support, according to the record, Judge Bury also made findings about Dr. Main, the former Clinical Director of the STU, and how Main "**had it in for**" Mr. Tinsley due to his filing of grievances and lawsuits. Main told Mr. Tinsley he would never get out of the STU if he kept filing grievances, (**"Other words not providing any Treatment for Mr. Tinsley to get discharged from the STU"**) and these claim were the subject of a prior civil rights case in the District Court. And, now the STU's staff are doing much more, worst mistreatment against Mr. Tinsley, than what Main did to him, by still following his policy that he left behind, after his being discharged from his STU's Clinical Director's position.

At Mr. Tinsley's civil commitment trial, on his appeal, and in his certification to Supreme Court, as well as in his Complaint, Plaintiff does raises Claims explicitly that the State, STU and/or defendants are blocking Mr. Tinsley, the Treatment to get him discharged from the STU, and refused to advance him from Phase 2 to 3A. Even after Judge Bury issued Court ordered an **"accelerated review"** that on September 7, 2022, Dudex issued a report that included misrepresentation and did **"not honestly reflect the truth from Mr. Tinsley's interview"** or his progress. **See Certification of Russell Tinsley In Support of his Amended Complaint. Also see** Plaintiff Tinsley's appellate Brief and Plaintiff Tinsley's appellate appendix, volume 1, and Mr. Tinsley's Complaint re Paul Dudex Aa23 for that Brief in the lower courts.

Plaintiff claims the reports was based on **"bias and prejudice,"** and more recently breached the court order, violated the code of ethics for psychologists and amounted to malpractice. Id. Plaintiff, however, provides many examples or facts showing bias or misrepresentations in Dudek's reports, throughout his trial court hearing, exhibits, brief, appendix and his **Certification of Russell Tinsley In Support of his Amended Complaint of the "many" grievances against defendants' STU staff that involved Dudex.** Id.

Mr. Tinsley, filed these grievances about his treatment team, the TPRC and Dudex and Dorio's reports, complaining that they were untruthful due to racial bias and prejudice toward him. Id. at in one of the grievances Mr. Tinsley submitted on October 9, 2022, Plaintiff also requested a treatment team meeting with his own family members and a standby attorney to discuss his treatment issues and punishment he has received. **See Certification of Russell Tinsley In Support of his Amended Complaint** Id. at On November 17, 2022, respondents' staff at the STU Stanzione, Treatment Team 3, or Ottino denied the grievance. Petitioner also claims that he filed claims and informed defendants' staff at the STU Stanzione, Ottino, Toth, Dorio, and Dudex about **"all of the misconduct"** described in his **Certification of Russell Tinsley In Support of his Amended Complaint and Exhibits.**

**Mr. Tinsley also notified the Superior Court of New Jersey- Essex County Criminal Division, Honorable Fulli Love, and Judge, wherein Mr. Tinsley expressed his concerns regarding his motion for a petition for discharge. Mr. Tinsley forwarded a copy to Your Honor Court.**

On December 12, 2022, Ms. Toth gave Plaintiff a copy of a report prepared by Dudex, which included findings from the TPRC and Treatment Team 3, at that time, recommendations. See Mr. Tinsley's filed institution's grievances Mr. Tinsley further report that Ms. Toth's treatment notes, which she sent to the TPRC committee, do not truthfully reflect Plaintiff's positive progress and his meaningful discussion of his sex offense history and are based on racism. Plaintiff has provides additional facts of examples of misrepresentation or racism reported contained in STU's treatment notes, in his **Certification of Russell Tinsley In Support of his Amended Complaint and Exhibits.**

When facilitator Ms. Toth, asked Plaintiff about **"How was Court and what happened,"** and Plaintiff discussed the Judge Bury's Order and its findings. In his process group, Plaintiff also discussed Dudek's report and pointed out to the group that the report is dishonest about his interview and treatment progress and is based on Treatment Team's notes, which include **"racial**

profiling," "**lies, bias[,] and prejudice**." Although facilitator Toth knew Dudek's report was wrong, she supported Dudex's fabricated report. Again, Plaintiff does provide facts about the "**dishonest**" or "**fabricated**" portions of Dudex's report or provide facts showing that not only facilitator Toth's treatment notes were based on "**racial profiling**" or racial bias, but other Facilitators are just as bad. See **Certification of Russell Tinsley In Support of his Amended Complaint and Exhibits.**

## POINTS AND AUTHORTIES

Mr. Tinsley submit the Complaint, was based on whether Mr. Tinsley shall be discharged to Philadelphia, PA., to fulfill its Pennsylvania's registration requirements, **pursuant to U.S. v. Ross**, 801 F.3d 374,379 (3rd Cir. 2015) rendered by the PA's Court of Common Pleas,

1.) The trial court Judge abused its discretion by allowing the states' witnesses to fabricate in their reports and testimony to commit perjury, based on amount of heaping prejudice in a biased unconstitutional violation; And

2.) Mr. Tinsley never demonstrated that he was a danger to self and others; or he presented serious difficulty with control over dangerous sexual behavior. **In re; IMO Civil Commitment of W.Z.** 372 N.J., etc., **(See attached Certification of Russell Tinsley in Support of his Amended Complaint and Exhibits.**, that the State alleged they are unable to address, when these claims were also raised in Mr. Tinsley's appellate briefs, as well as to the Motions he has attached all relevant exhibits with his motion filed in this Court.

In Claims raised, Plaintiff brings all these claims under the First, Fifth, Eighth, and Fourteenth Amendment for denying him adequate treatment to get discharged from the STU, Excess use of Force and/or Cruel and Unusual Punishment, as well as Right to Freedom of Religion of the Constitution of the United States. Plaintiff is asserting that defendants have even violated his fundamental right to minimally adequate treatment as a civilly committed sex offender, which arises under the Fourteenth Amendment. **In Learner v. Fauver**, 288F.3d 532 (3d Cir. 2002), the Third Circuit held that, since New Jersey's statutory scheme for sex offenders is predicated on the inmate's response to treatment, that statutory regime creates a fundamental due process liberty interest in treatment. Id. at 545; **see also Youngberg v. Romeo**, 457 U.S. 302, 316, 319, 322 (1982); **Kansas v. Hendricks**, 521 U.S. 346, 368-69 (1997)(inmates housed in prison-like conditions must be afforded a treatment comparable to that provided to other civilly committed persons confined in treatment units). Thus, under Third Circuit law, Plaintiff has a substantive due process right in a treatment facilitating his release prospects, and "**New Jersey's statutory scheme for the civil commitment and treatment of sex offenders creates a due process liberty interest in that treatment**." **Tinsley v. Main**, No. 20-2846, 2021 WL 2853152, at *2 (Jul. m8 2021)(citing Leamer, 288 F.3d at 545). In assessing this type of claim, courts ask whether the "**officials acted with deliberate indifference with respect to the Petitioner's treatment and deprived him of his liberty interest in a way that shocks the conscience.**" Id. (citing **Leamer**, 288 F.3d at 546-47).

Here, Plaintiff does complain in his Amended Complaint, to the lower courts and in his filed institution's grievances, as well as in his list of the **filed Certification of Russell Tinsley in**

**Support of his Amended Complaint, and to the lower courts. Also see Mr. Tinsley's Notice of Motion to Superior Court of New Jersey Essex County Criminal Division and Mr. Tinsley's Notice of Motion to Supplement Motion,** that the way he is being mistreatment by the STU's staff, he is not receiving adequate sex offender treatment and they are refusing to release him; advance him or preventing treatment towards his release due to their; or Mr. Tinsley feel as though, he was cheated by the defendants, his Treatment Team, TPRC and /or the ("STU") Warden-State Attorney General Office, under false pretenses and they denied Mr. Tinsley of his Life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. **Amendment XIV of the United States Constitution.**

Mr. Tinsley believes an criminal investigation, and Federal Criminal Charges against those state employees, in the Judge Bury report should be filed, on Fraudulent Pretenses, Cheating by false pretenses, and by the States' ("STU's") Therapists, for their cruel method they use in their illegal psychology "**Psychiatry**" to preventively detain Mr. Tinsley, rather provide Adequate Treatment for his release, rather than mistreatment was their real goal. This is a misuse of psychiatry, and by means of fraud and a criminal act.

The defendants' Therapists' practice is unauthorized of Psychiatry; or who has not been licensed or admitted to practice Psychiatrics in a given jurisdiction. See: 41 N.J.R. 4397(a), 42 N.J.R. 793(a) Section was "**Mental Health Services Manual**" (c) Collection of Mental Health Assessment deter shall be performed by the appropriate licensed Mental Health Professionals within the scope of their respective license, and membership with the certified New Jersey Board of Psychological Examiners and / or with American Psychological Association, but none of the State' expert witnesses, who fabricated opinions against Mr. Tinsley, was Board certified psychological members. Not even the STU's Therapists.

Therefore, the defendants so-called treatment falls below Professional standards enough to "**shock the conscience**" to be constitutionally inadequate.

If it turns out that civil commitment is in reality punishment for past crimes or a way to prevent future crimes that might be committed, or in the words of **Justice Anthony M. Kennedy "[i]f the civil system is used simply to impose punishment after the state makes an improvident plea bargain on the criminal side, then it is not performing its proper function"**. **Kansan v. Hendricks**, 521 U.S. 346, 373 (1997) (Kennedy, J. concurring); see also id. ("**We should bear in mind that while incapacitation is a goal common to both the criminal and civil systems of confinement, retribution and general deterrence are reserved for the criminal systems alone.**")

11

## CONCLUSION

For the foregoing reasons, Tinsley's Complaint/ and Amended Complaint should be granted and in the defendants should be ordered to answer.

Russell Tinsley, in pro se

*[signature]*

Dated: July 18, 2025

Cc:

Attorney General Platkin and the
Administrative Office of the Courts
Chief Justice Rabner,
25 W. Market St., PO Box 037,
Trenton, NJ 08625

Russell Tinsley
PO Box 905
Avenel, NJ 07001

FIRST-CLASS
US POS
ZIP 07001
02 7H
00062160

XRAYED

CLERK
DISTRICT COURT
DT OF NEW JERSEY
RECEIVED
2025 JUL 28 A 11:31

To: Clerk,
United States District Court,
M.L. King Jr. Federal Bldg. & U.S. Court
50 Walnut Street
Newark, New Jersey 07101

"Confidential Legal Mail"